UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **JONATHAN WONG** | **CASE NO. 6:24-CV-01410** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **FEDERAL TRADE COMMISSION ET AL** | **MAG. JUDGE DAVID J. AYO** |

## MEMORANDUM RULING

Before the Court is a *Motion to Dismiss Or, In the Alternative, To Hold Case in Abeyance Pending Supreme Court Proceedings* (R. Doc. 27) filed first by one of the defendants, the Horseracing Integrity and Safety Authority, Inc. (the "Authority"), and later "join[ed] in full" by the remaining defendant, the Federal Trade Commission (the "FTC") (collectively "Defendants"). *See* R. Doc. 29. The plaintiff, Jonathan Wong ("Mr. Wong"), opposes (R. Doc. 34), and the Authority has filed a Reply (R. Doc. 35).

After careful consideration of the pleadings, the parties' memoranda, and the applicable law, the Motion is **GRANTED**.

### I. BACKGROUND

Mr. Wong trains thoroughbred racehorses. R. Doc. 1 at 16–17. He is apparently pretty good at it, too. *See id.* Trouble began for Mr. Wong, however, when a racehorse under his tutelage—named Heaven and Earth—tested positive for a banned substance following a race in Indiana. *Id.* at 17–18. Heaven and Earth, like any other professional athlete, gets regularly drug tested. *Id.* at 18. And, as the "Responsible Person" for Heaven and Earth, it is Mr. Wong's "duty . . . to ensure that no Banned Substance is present in the body of his . . . Covered Horse." *Id.* at 6

1

(quoting HISA Rule 3212). But not just "[r]esponsible" for Heaven and Earth's sobriety, Mr. Wong is "strictly liable for any Banned Substance . . . found to be present in a Sample collected from his . . . Covered Horse(s)." *Id.* (citing HISA Rule 3212(a); and 15 U.S.C. § 3057(a)(2)). It follows, then, that when Heaven and Earth tested positive for metformin—a diabetes drug prohibited by the Authority—Mr. Wong suffered penalties. *Id.* at 26. The Authority suspended Mr. Wong from thoroughbred horseracing for two years, made him forfeit $21,600 of Heaven and Earth's winnings, fined him $25,000, and took another $8,000 for "adjudication costs." *Id.* Newly suspended, Mr. Wong had to transfer 150 horses to other trainers, including a horse that went on to compete at the Kentucky Derby. *Id.* at 19.

Not all was lost, however. As will be discussed in greater detail below, the Authority does not operate in Louisiana. *See Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.4th 415 (5th Cir. 2024). So, Louisiana provided Mr. Wong with an opportunity to continue his vocation. Now, living and training horses in Louisiana, Mr. Wong brings this suit to vindicate himself. R. Doc. 1 at 31.

Mr. Wong's case is twofold. He first challenges the constitutionality of the statute creating the Authority, the Horseracing Integrity and Safety Act ("HISA"). *Id.* at 2. Second, he appeals the administrative adjudication and civil penalties levied against him by the Authority. *Id.*

The day after filing suit, Mr. Wong moved for a preliminary injunction to prohibit enforcement of the civil penalties against him. R. Doc. 6.

2

The Authority thereafter filed the instant Motion, averring that dismissal is warranted (1) because this is an improper venue, (2) because the Court lacks personal jurisdiction over the Authority, and (3) because the case cannot proceed without the Authority. *See* R. Doc. 27-1 at 8. The Authority alternatively contends that the case should be stayed pending the outcome of relevant Supreme Court litigation. *Id.* Mr. Wong opposes dismissal, averring that venue is proper, personal jurisdiction exists over the Authority, and that the Authority is dispensable. *See* R. Doc. 34.

Once it was somewhat apparent to the Court that personal jurisdiction did not exist over the Authority, we called a status conference to explore some alternatives to dismissal. *See* R. Doc. 37. The parties did not agree on alternatives. *See* R. Doc. 43. But the next day, Mr. Wong voluntarily dismissed the Authority under Federal Rule of Civil Procedure 41(a)(1)(A)(i). R. Doc. 42. With the Authority gone, the FTC reiterated its stance that this case should be dismissed, and that the Authority is an indispensable party. *See* R. Doc. 44.

## II.   LAW AND ANALYSIS

Despite Mr. Wong's last-minute jurisdictional shell game, *see* R. Doc. 42, the Court must still determine whether the Authority is an indispensable party. He cannot simply assign all his jurisdictional flaws to the Authority, voluntarily dismiss the Authority, and keep his case. *See* Fed. R. Civ. P. 19(a)-(b) (explaining that a court must dismiss a civil action if it lacks personal jurisdiction over any "necessary" and "indispensable" party). That said, we begin our analysis with Federal Rule of Civil Procedure 19(a), where necessity is outlined.

3

### A. Rule 19(a) Analysis

Federal Rule of Civil Procedure 19 "seeks to bring into a lawsuit all those persons who ought to be there by requiring joinder." *Pulitzer–Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986). The first step of a Rule 19 analysis is to determine whether an absent party is necessary to the litigation. Fed. R. Civ. P. 19(a). If the Court finds that an absent party is necessary, it must analyze whether that party can be joined. *Id.* If the Court cannot gain jurisdiction over the necessary party, the Court must address certain factors under Rule 19(b) to determine whether adjudicating the dispute in the absence of the necessary party can be done "in equity and good conscience," or if the case should be dismissed due to the inability to join the indispensable party. Fed. R. Civ. P. 19(b).

A party is deemed necessary under Rule 19(a)(1) if in its absence (1) "the court cannot accord complete relief among existing parties"; (2) disposition of the action may, as a practical matter, "impair or impede" the ability of the absent party to protect "an interest relating to the subject of the action"; or (3) those parties presently in the case will be "subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations." *See* Fed. R. Civ. P. 19(a)(1); *Pulitzer–Polster*, 784 F.2d at 1308–09. The nature of Rule 19 requires that courts make "highly practical, fact-based decision[s]." *Pulitzer-Polster*, 784 F.2d at 1309.

We begin with the first factor. To determine whether complete relief is available without the absent party, "the Court looks to the relief prayed for by the claimant." *Cain v. City of New Orleans*, 184 F. Supp. 3d 349, 358 (E.D. La. 2016).

4

Here, the FTC is simply not answerable for much of the relief Mr. Wong seeks. Easiest first, Mr. Wong seeks money damages, R. Doc. 1 at 1, and Mr. Wong seeks a jury trial. *Id.* An Administrative Procedure Act ("APA") claim against the FTC, which Mr. Wong now contends is the only claim that matters, R. Doc. 34 at 8–9, 11, does not contemplate either of these. "[T]he Administrative Procedure Act's waiver of sovereign immunity … applies only to actions seeking relief other than money damages, 5 U.S.C. § 702, and the right to a jury trial does not attach in such actions." *Shields of Strength v. U.S. Dep't of Def.*, 742 F.Supp.3d 721, 724 (E.D. Tex. 2024) (cleaned up). So that is incomplete relief. But more seriously, according to Mr. Wong, "The Court should declare HISA and the HISA Rules to be unconstitutional, preliminarily and permanently enjoin Defendants from enforcing HISA and the HISA Rules against Wong, and vacate the final decision and civil sanctions imposed against Wong." R. Doc. 1 at 2; *see also id.* at 46; R. Doc. 6-1. Mr. Wong's arguments regarding the instant Motion focus only on the third prayer—vacatur of the final decision—and in that vein, Mr. Wong makes a great argument for why the Authority would not be a necessary party to an APA suit challenging only the final agency action of the FTC. *See* R. Doc. 34 at 10–11. But the same is not true for Mr. Wong's request to "declare HISA and the HISA Rules to be unconstitutional, [and] preliminarily and permanently enjoin Defendants from enforcing HISA and the HISA Rules against Wong." R. Doc. 1 at 2.

In Mr. Wong's oft-cited case, *Nat'l Ass'n of Sec. Dealers, Inc. v. S.E.C.,* the National Association of Securities Dealers, Inc. ("NASD"; now "FINRA") sued its

5

reviewing agency, the SEC, because the SEC reversed the NASD's prior adjudication. 431 F.3d 803 (D.C. Cir. 2005). The D.C. Circuit there held that the NASD could not seek "judicial review of a[n] SEC order overturning a disciplinary action it has taken as a first-level adjudicator pursuant to the Act." *Id.* at 809–812. This would be the equivalent of the Authority here—as first-level adjudicator under HISA—suing the FTC if the FTC undid Mr. Wong's suspension and sanctions. But Mr. Wong's case is not the Authority butting into the FTC's final adjudicative decision, nor is it Mr. Wong seeking only to undo that final decision. *See generally* R. Doc. 1. At stake here—beyond the FTC's final adjudicative decision—is the constitutionality of HISA and the HISA Rules, and an injunction against the Authority. *Id.* at 2; R. Doc. 6-1. We are provided no authority that would allow the Court to shoehorn an injunction broadly preventing the Authority from enforcing HISA rules against Mr. Wong into an action putatively seeking only "vacat[ur] [of] the FTC's Final Decision." Sure, "a district court may bind nonparties who are in active concert with a defendant…" *Jacobson v. Florida Sec'y of State,* 974 F.3d 1236, 1255 (11th Cir. 2020) (Pryor, C.J.) (citing Fed. R. Civ. P. 65(d)(2)(C)). But any injunctive relief for claims beyond that which the FTC alone can redress—here, beyond vacatur of the Final Decision—simply cannot issue. *See id.* at 1254 (explaining "the settled principle that it must be *the effect of the court's judgment on the defendant*—not an absent third party—that redresses the plaintiff's injury.") (cleaned up and emphasis kept); *see also, Crystal Clear Special Util. Dist. v. Cobos,* 1:22-CV-01293-DAE, 2024 WL 5455984, at *4 (W.D. Tex. Dec. 13, 2024), *report and recommendation adopted*, 2025 WL 457826 (W.D. Tex.

6

Feb. 11, 2025) (citing *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) ("In the context of injunctive relief, a plaintiff cannot satisfy the redressability prong of standing when the plaintiff sues a defendant who has no power to redress the alleged injury."). The same goes for any declaratory relief. *See Jacobson,* 974 F.3d at 1255 (cleaned up) ("A declaratory judgment against the Secretary does not bind the Supervisors, who are not parties to this action. As nonparties, the Supervisors are not obliged in any binding sense to honor an incidental legal determination this suit produces."). Since Mr. Wong asks for relief that exceeds what the FTC is answerable for, the Court finds that the first factor is met.

As for the second factor, Mr. Wong's cited case betrays him again, for much the same reasons. For this factor, we consider whether leaving the Authority out would impair or impede the Authority's ability to protect its interests related to the action. *See* Fed. R. Civ. P. 19(a)(1)(B)(i). It would. The *Nat'l Ass'n of Sec. Dealers* court made clear the "narrowness" of that dispute, explaining all sorts of suing that the NASD could get into, so long as it wasn't in its role as a first-level adjudicator. 431 F.3d at 810. Nothing in that opinion suggests that NASD—or the Authority here—is prohibited from defending "a concrete interest" falling outside of "its interest as a first-level adjudicator." *See id.* In the instant case, a judgment "declar[ing] HISA and the HISA Rules to be unconstitutional and preliminarily [and] permanently enjoin[ing] Defendants from enforcing HISA and the HISA Rules against Wong"[1] may "as a practical matter impair or impede the [Authority's] ability to protect" "an

---

[1] R. Doc. 1 at 2.

7

interest relating to the subject of the action." *See* Fed. R. Civ. P. 19(a)(1)(B)–(a)(1)(B)(i). Such relief impugns the Authority's interests beyond its adjudicatory role, namely the Authority's interest in continuing to exist, but also its role in defending the scope of its powers and responsibilities. *See* R. Doc. 35 at 9–11 (citing cases and the record). So, the Authority's involvement comports with *Nat'l Ass'n of Sec. Dealers*. *See* 431 F.3d at 810. Furthermore, Mr. Wong's contentions that the Authority has no distinct interest or role in this suit are incredulous. It is the thrust of Mr. Wong's constitutional argument that the Authority is not sufficiently ancillary to the FTC, or even, that the *FTC* marches to *the Authority's* tune. *See* R. Doc. 1 at 14. But now when it suits him, the Authority has little to no agency or autonomy and is indistinct of the FTC. *See* R. Doc. 34 at 12–14. As the pleadings support the existence of a distinct interest of the Authority in this case, and as nonjoinder would impede the Authority's ability to defend that interest, this factor is met.

    The third factor is also met. In this factor, we explore whether the Authority's absence would leave the FTC "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of [the Authority's] interest." *See* Fed. R. Civ. P. 19(a)(1)(B)–(a)(1)(B)(ii). Foremost, we are assured that if the FTC's Final Decision were undone by this Court, the FTC would not be inconsistently obligated. *See* R. Doc. 35 at 10. But again, Mr. Wong seeks more than that. For substantially the same reasons that any relief beyond vacatur of the Final Decision would not accord complete relief between Mr. Wong and the FTC, *see ante* at 5–7,

8

such relief would leave the FTC subject to a substantial risk of incurring inconsistent obligations because of the Authority's interest. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii).

The Court thus concludes that the Authority is a necessary party.

### B. Personal Jurisdiction

Because Rule 19(b) first asks whether a necessary party under Rule 19(a) "cannot be joined," the Court must next consider whether it can exercise personal jurisdiction over the Authority. Fed R. Civ. P. 19(b). If so, joinder will be required under Rule 19(a); if jurisdiction is lacking, the Court will have to consider the Rule 19(b) factors to determine whether this case must be dismissed. *See id.*

Under Fifth Circuit precedent, personal jurisdiction over a defendant exists if (1) the state's long-arm statute extends to the defendant,[2] and (2) the exercise of such jurisdiction is consistent with due process. *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The Louisiana long-arm statute extends as far as is permitted by due process. *See Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640 (5th Cir. 2002). The exercise of personal jurisdiction over a defendant comports with due process only if (1) the defendant has purposefully availed itself of the benefits and protection of Louisiana by establishing "minimum contacts" with Louisiana, and (2) the exercise of personal jurisdiction over the defendant does not

---

[2] "It may seem anomalous to tie personal jurisdiction in a federal question case to the long-arm statute of the state in which the federal court sits." *Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415, 422 (5th Cir. 1986), *aff'd sub nom., Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97 (1987). But that is the rule. *See Ballard v. Holinka*, 601 F.Supp.2d 110, 117–118 (D.D.C. 2009). And it doesn't really matter anyway because "the limits of the Louisiana long-arm statute are coextensive with constitutional due process limits." *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242–43 (5th Cir. 2008).

9

offend traditional notions of fair play and substantial justice. *See Allred v. Moore & Peterson*, 117 F.3d 278, 285 (5th Cir. 1997).

Under the minimum contacts test, a defendant may be subject to either "general jurisdiction" or "specific jurisdiction." *See Ford v. Mentor Worldwide, LLC,* 2 F. Supp. 3d 898, 903 (E.D. La. 2014). General jurisdiction arises when a defendant maintains "continuous and systematic" contacts with the forum state, even when the cause of action has no relation to those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). "The Fifth Circuit has characterized the 'continuous and systematic contacts' test as a 'difficult one to meet.'" *Ford*, 2 F. Supp. 3d at 903 (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).

Specific jurisdiction exists where a nonresident defendant "has 'purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The Fifth Circuit has formulated a three-step analysis for specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state

> or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.
>
> *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)

(citation omitted). At the motion to dismiss stage, the plaintiffs bear the burden of presenting sufficient evidence to support a prima facie case of jurisdiction. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000). We "accept the plaintiff's uncontroverted, nonconclusional factual allegations as true and resolve all controverted allegations in the plaintiff's favor." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

Mr. Wong does not argue the Court has general jurisdiction over the Authority. *See* R. Doc. 34 at 18. Therefore, the Court's analysis focuses on whether there are sufficient minimum contacts to give rise to specific jurisdiction.

There are not. Defendants' Reply brief on the subject gets it exactly right. *See* R. Doc. 35 at 5–7. The Authority has been expelled from the State of Louisiana since January of 2023. *See* JUDGMENT, *Louisiana v. Horseracing Integrity & Safety Auth., Inc.*, 22-30458, 5th Cir. ECF No. 145-2 (5th Cir. January 31, 2023) (mandating 2022 WL 17074823 (5th Cir. Nov. 18, 2022) and lifting associated stay). And here, there are simply no plausible allegations that the Authority has done any purposeful availing in Louisiana since that date, rendering Mr. Wong's contention that "[t]he Authority's prosecution of Wong is not its only contact with Louisiana" flawed in its premise. *See* R. Doc. 34 at 21. Broadly, Mr. Wong seems to contend that by preventing Mr. Wong (who is currently in Louisiana) from participating in horseraces

11

in other states, the Authority has "reached out" to Louisiana. *See id.* at 19. But that is not the law of Mr. Wong's chosen case, *Def. Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020), "where the Fifth Circuit found that a Texas district court had personal jurisdiction over an out-of-state regulator." *See* R. Doc. 34 at 19. Indeed, it is right the opposite. *Def. Distributed* concerned an officious Attorney General of New Jersey demanding[3] a Texan, in Texas, to stop doing something nationwide—beyond conduct "involving New Jersey property or residents." 971 F.3d at 488–492. Because the Attorney General was trying to regulate beyond what affected New Jersey—threatening a Texan for his contact with say, Minnesotans—he was found to have purposefully availed himself to Texas. *Def. Distributed*, 971 F3.d at 492. Much differently, here we have the Authority—a non-Louisianan at all times during the adjudication—regulating Mr. Wong—a non-Louisianan at all times during the adjudication. *See* R. Doc. 1 at 30–31. Again, the Authority was cast out of Louisiana in January 2023. *See* R. Doc. 35 at 5–6. Heaven and Earth failed her drug test more than five months later, in Indiana, in June of 2023. *See* R. Doc. 1 at 18. Mr. Wong—a then-Californian—was provisionally suspended on July 2, 2023. *Id.* at 19. Mr. Wong was formally charged with the doping violation on August 10, 2023. *Id.* at 20. The hearing adjudging the merits of the charge was held on January 9 and 10, 2024. *Id.* at 25. Mr. Wong wasn't finally sanctioned by the Authority until January 29, 2024, the month he moved to Louisiana. *Id.* at 26. And last, Mr. Wong "unregistered" with the Authority on February 12, 2024. R. Doc. 34-1 at 3. Aided by the calendar

---

[3] By way of a cease-and-desist letter mailed to Texas.

12

alone, there is no "contact with Louisiana" from "the Authority's prosecution of Wong." *See* R. Doc. 34 at 21. Rather, the Authority, as alleged in the Complaint, appears to have stayed entirely within its lane, enforcing only its rules in states where it has *the authority* to do so, unlike the Attorney General in *Def. Distributed*. *See generally* R. Doc. 1; 971 F.3d at 488–492. Indeed, the Authority's total *absence* from Louisiana is the only reason for Mr. Wong's recent *presence* in Louisiana. R. Doc. 1 at 31.

The Authority's other, post-prosecution contacts alleged by Mr. Wong fare no better. The $25,000 fine was imposed in January of 2024. R. Doc. 1 at 26. Mr. Wong moved to Louisiana that same month and did not unregister with the Authority until February 12, 2024. R. Doc. 34-1 at 1-3. There is no plausible allegation that the Authority should have somehow known Mr. Wong was on his way to Louisiana, such that their issuing a fine at the end of a six-month adjudicatory process would constitute purposeful availment to Louisiana. *See Burger King v. Rudzewicz,* 471 U.S. 462, 473–77 (1985). Nor is the Court convinced that personal jurisdiction over the Authority would arise from Mr. Wong's "presum[ption] [that] the FTC would reach into Louisiana to collect" the fine. *See* R. Doc. 34 at 21, n.10. This is because personal jurisdiction cannot be based on "hypothetical" contacts. *Bulkley & Associates, L.L.C. v. Dep't of Indus. Relations,* 1 F.4th 346, 354 (5th Cir. 2021).

The last alleged contact arises from the Authority's online interactive database on which anti-doping violations are published, and Mr. Wong being denied stalls by Louisiana racetrack operators who read that website. *See* R. Doc. 34 at 21.

13

However, "running a website that is accessible in all 50 states, but that does not specifically target the forum state, is not enough to create the 'minimum contacts' necessary to establish personal jurisdiction in the forum state." *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 785 (5th Cir. 2021). Nor can personal jurisdiction be established over the Authority merely because third parties with access to the Authority's website choose *independently* to mistreat those suspected of doping in other states. *See Carmona v. Leo Ship Mgmt., Inc.,* 924 F.3d 190, 194 (5th Cir. 2019). Accordingly, the Authority's lack of minimum contacts with Louisiana precludes any "reasonabl[e] anticipat[ion] [of the Authority] being haled into court [in Louisiana]." *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

But even if the Authority could be said to have purposefully availed itself to Louisiana; to establish specific personal jurisdiction, "[Mr. Wong's] claims must stem from [the Authority's] contacts with [Louisiana]." *Carmona,* 924 F.3d at 197. Here, there is simply no "affiliation between the forum and the underlying controversy…" *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (cleaned up). It is only by virtue of Mr. Wong's *subsequent*, *unilateral* move to Louisiana that the Authority is (or was) before a Louisiana federal court now. *See ante* at 12–13. Such a disconnect between the claims and the forum state where those claims are raised precludes specific personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum."); *see also id.* ("[I]t is likewise insufficient to rely on . . . the 'unilateral activity' of a plaintiff [to establish personal jurisdiction].").

14

To conclude, it is plainly offensive to "traditional notions of fair play and substantial justice" for Mr. Wong to move to Louisiana in order to avoid the Authority and, in his next act, walk into a Louisiana federal court and complain about the Authority. *See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (cleaned up). Such a course does not comport with the Due Process guarantees of our Constitution, and thus, the Court cannot exercise personal jurisdiction over the Authority. *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 113–114 (1987).

### C. Rule 19(b) Analysis

Because the Authority is a necessary party over which the Court cannot exercise personal jurisdiction, we must proceed to the final step of our analysis and examine the factors listed in Rule 19(b) to determine whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The Court must analyze the following four factors to determine whether the case should be dismissed:

> (1) to what extent a judgment rendered in the party's absence might be prejudicial to that party or others in the lawsuit; (2) the extent to which possible prejudice can be lessened or avoided by including protective provisions in the judgment, specially shaping the relief, or utilizing other measures; (3) whether a judgment rendered in the party's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the party cannot be joined.

*Id.* These factors are not rigid tests, but rather are guides to the overarching "equity and good conscience" determination. *Wichita and Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 774 (D.C. Cir. 1986). "Pragmatic and equitable considerations

control the Rule 19(b) analysis." *Lone Star Indus., Inc. v. Redwine*, 757 F.2d 1544, 1552 (5th Cir. 1985).

The first factor evaluates the possible prejudice that might arise against existing or absent parties as a result of the court adjudicating a dispute despite the absence of an indispensable party. *See Doty v. St. Mary Parish Land Company,* 598 F.2d 885, 887 (5th Cir. 1979). In conducting this inquiry, courts may look at practical matters impairing or impeding an absent party's ability to protect itself. *Id.*

As explained in the Court's 19(a) analysis above, the Authority has interests distinct from the FTC, distinct from its role as first-level adjudicator of Mr. Wong's administrative proceeding, that only it can protect. *See ante* at 6–8. Again, it would affect the Authority far more acutely than it would affect the FTC if this Court were to declare HISA and the HISA rules unconstitutional, or if it were to enjoin enforcement of the HISA rules by the Authority. *See* R. Doc. 35 at 9–11 (citing cases and the record). The Authority is a four-year-old "private, independent, self-regulatory, nonprofit corporation" whose existence begins and ends with HISA and enforcing the HISA rules. *See Nat'l Horsemen's Benevolent & Protective Ass'n v. Black,* 107 F.4th 415, 421 (5th Cir. 2024). That is compared to the FTC, which is a 110-year-old independent agency broadly empowered to regulate and prevent unfair competition—in every aspect of business. *Fed. Trade Comm'n v. Gratz*, 253 U.S. 421, 422 (1920). In the context of Mr. Wong's case, the FTC merely reviews the HISA rules for "consistency" and hears appeals of the Authority's enforcement adjudications. *Nat'l Horsemen's Benevolent & Protective Ass'n,* 107 F.4th at 421.

Whereas the Authority *actually* promulgates the rules and *actually* enforces them. *See id.* Put simply, the FTC has far more to worry about than HISA, yet the Authority has only HISA to worry about. Thus, the FTC does not "have the same personal stake in th[is] battle as the [Authority]." *See Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 269 (5th Cir. 2022). This, combined with the Complaint's allegations that the Authority is virtually unaccountable to the FTC, *see* R. Doc. 1 at 14, renders it doubtful that the FTC can adequately protect the Authority's interests if this suit were to proceed in the Authority's absence. Accordingly, the first factor weighs in favor of dismissal. *See Lee,* 47 F.4th at 269 (explaining in the context of this factor that a party and absent party "hav[ing] overlapping but not identical interests […], counsels in favor of dismissal.") (cleaned up); *see also Dernick v. Bralorne Res., Ltd.*, 639 F.2d 196, 199 (5th Cir. 1981) ("Failure to join the subsidiary in … situations where the subsidiary was the primary participant in the events giving rise to the lawsuit … would be improper.").

The second factor evaluates whether the prejudice can be lessened by shaping the judgment and relief rendered. *See* Fed. R. Civ. P. 19(b)(2). The Court believes that it can. But when asked whether Mr. Wong would amend his Complaint to drop those claims that impugn the Authority's distinct interests and confine his claims to vacatur of the FTC's Final Decision, he declined. *See* R. Doc. 43 at 2. Accordingly, at the time being, this factor weighs in favor of dismissing the Complaint.

The third factor considers whether a judgment rendered in the Authority's absence would be adequate. Here, the stumbling block is whether the FTC can "carry

17

out the specific relief requested…" *Lee,* 47 F.4th at 270.  Again, as the Court would be limited in the relief that it could render without the Authority being joined as a party, i.e., anything beyond vacatur of the Final Decision, a judgment rendered in this action would not be adequate.  *See ante* at 6–7.  Accordingly, this factor weighs in favor of dismissal.

The final factor is about whether Mr. Wong would have an adequate remedy if the action were dismissed.  He would.  He can bring his case elsewhere, *see* R. Doc. 27-1 at 16, but refuses to.  *See* R. Doc. 43.

Accordingly, the Court finds that the Authority is an indispensable party.

### III.   CONCLUSION

Having found the Authority to be a necessary party, having found joinder of the Authority impossible for lack of personal jurisdiction, and having found the Authority indispensable to this litigation, the Motion is **GRANTED**, and this case is **DISMISSED WITHOUT PREJUDICE**.

"The proper course forward is evident: [Mr. Wong] must bring this [] action in the proper venue after joining [the Authority]." *Ohio Sec. Ins. Co. v. Gorman,* 4:22-CV-427-P, 2022 WL 22858906, at *3 (N.D. Tex. Sept. 27, 2022).

**MONROE, LOUISIANA,** this 25th day of March, 2025.

                                                       Terry A. Doughty
                                                       United States District Judge